UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT DUPES<br>807 Swinton Avenue<br>Bronx, New York 10465<br><br>  Plaintiff,<br><br>  v.<br><br>Robert McHUGH<br>Secretary of the Army<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) CA No. _____<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR DECLARATORY RELIEF**

  This is a non-monetary claim to set aside and remand the decision of the Army Board for Correction of Military Records # AR2012-0015326 (Oct. 17, 2012), that summarily denied as untimely by 1-day plaintiff's reconsideration request of July 27, 2012, to rehear BCMR #AR2011-0000723 of July 26, 2011.  The 2011 decision denied Dupes' request for disability retirement for Vietnam combat wounds from gunfire, grenade and mortar fire, that caused recurrent bladder and urethral strictures with urinary tract infections, post-traumatic stress disorder (PTSD) and Traumatic Brain Injury (TBI).

  Plaintiff challenges as arbitrary and capricious the BCMR's 2012 application of  Army Regulation 15-185 ¶ 2-15b, in this circumstance–while incapacitated under a temporary legal disability caused by military service–was an "injustice." 10 U.S.C. § 1552(a) (requires Board to correct error and remove injustice).  The time limit should have been equitably tolled one day.

  Alternatively, refusal to forward to the BCMR the request to reconsider its 2011 decision, was *ultra vires* agency action by violating its mandate under 10 U. §1552 (a)(1) when the particular application of  ¶ 2-15b was an injustice, by not equitably tolling the deadline by 1 day.

1

This is a deserving case of a decorated Vietnam war hero, twice wounded. Throughout 2012 he was 100% mentally disabled, and suffering from deteriorating polytrauma of PTSD, TBI, and severe neuropathy--- all causing memory problems, severe pain, chronic headaches, confused judgement, and acting without thinking. His July 27, 2012, request missed the deadline because in the weeks immediately preceding submission, he mentally and physically collapsed after suffering relapse of acute PTSD with hallucinations along TBI chronic migraines. This was triggered by the traumatic war memories recollected while preparing to finally file the request for reconsideration.

The case should be remanded, and Dupes' original request for reconsideration of 27 July 2012 forwarded to the ABCMR.

## JURISDICTION AND VENUE

Jurisdiction is conferred on this Honorable Court by the Administrative Procedure Act, as amended, 5 U.S.C. § 702 and § 706(2)(A).

In the alternative under the *ultra vires* claim, jurisdiction is conferred by 28 U.S.C. § 1331, with waiver of sovereign immunity under the Administrative Procedure Act, U.S.C. § 702.

Venue is proper as the Defendant is found in this District.

## PARTIES

Plaintiff, Robert Dupes is a former active duty enlisted soldier in the U.S. Army.

Defendant, Robert McHugh, in his official capacity, is the Secretary of the Army.

## FACTS

1. In 1968 Robert Dupes enlisted in the regular Army. After completing Ranger School and Airborne School, Private Dupes in 1969 was reassigned for combat duty in Vietnam.

2. He served in Vietnam for about 21 months, from May 1969 to February 1971. For heroism he was awarded the Silver Star, two Bronze Star medals, along with the Combat Infantry Badge. For multiple combat wounds he received two Purple Heart medals.[1]

3. During combat, he was twice wounded– the first in 1970; the second in 1971 severely by gun fire, grenade and mortar fire. He was medically evacuated for surgery.

4. From 1971 to 1979, he underwent numerous, ultimately unsuccessful surgeries to remedy recurrent bladder and urethral strictures with urinary tract infections, associated perineal pain and bilateral scrotal pain, severe dysuria (burning painful urination) and terminal hematuria (bloody discharge).

5. During a short interim period from January to September 1975, Dupes left the Army to attempt college. However, Dupes had a mental breakdown from severe anxiety. VA records show during this time he was hospitalized for 3 weeks at a Veterans Affairs Hospital in Phoenix AZ. He was diagnosed with anxiety neurosis– the precursor to PSTD.[2] He was prescribed anti-anxiety medications including Amitriptyline (currently Elavil)

6. Believing the Army would return "some stability" to his life, Dupes re-enlisted in September 1975. On his entrance questionnaire for medical history, Dupes deliberately did not list any prior mental health treatment. Due to stigma common at this time, this omission was for fear the military would refuse enlistment, or at same rank as Staff Sergeant (E-6). This is a perception among soldiers even today. In 2012 the Army Surgeon General stated the 2 primary barriers to soldiers seeking treatment for PTSD are— the stigmatizing effects of mental health diagnoses on their careers; and soldiers react to trauma like civilian first-responders—"although they may

---

[1] Medals also noted on his DD Form 214 *Report of Separation*.

[2] See generally. http://www.va.gov/vetapp03/files/0303023.txt (Dept.VA RO citation 0303023 [Feb. 2003](Vietnam veteran diagnosed in 1971 with "anxiety neurosis– a precursor of the subsequently recognized diagnosis of post-traumatic stress disorder...").

experience fear internally they are trained to fall back on their training skills...expressing fear and helplessness in less direct ways." OTSG/MEDCOM *Policy Memo* 12-035 (April 2012).[3]

7.   Moreover, PTSD was not included in the DSM-III until 1980, and not even recognized by the VA until 1982.   In the 1970 and into the 1980s, the collection of symptoms were still pejoratively called— both medically and culturally– the "post-Vietnam syndrome." Service members and veterans alike faces recriminations causing delay in these mental health claims.[4]

7A.   On his Army 1975 questionnaire for medical history, Dupes did note prior head injury, periods of unconsciousness, headaches, recurrent back pain, and urinary problems.   He was allowed to enlist at grade E-6, but not in the infantry.

8.   In November 1978, records show Dupes experienced trauma to his head resulting in ER admission for several days.  He was diagnosed with a concussion.

9.   In January 1979 Dupes at his Germany base hospital, underwent more surgery to remedy recurrent bladder and urethral strictures with urinary tract infections.  This was not successful.

10.   In March 1979 he was medically airlifted to Washington DC at Walter Reed Army Medical Center.   This additional surgery by May 1979 later proved unsuccessful, leaving recurrent urinary problems.  Army doctors told Dupes that he would need an additional 9th remedial surgery to allow him to medically qualify to reenlist by September 1979.

11. Dupes in August 1979 was issued a permanent "Physical Profile" with duty restrictions for significant limitations in the categories of "physical capacity/stamina" (#2 rating), and "lower extremities" (#3).  A permanent profile of 3 or 4 required retraining into a new speciality to reenlist. But believing that a 9th round of surgery would be unsuccessful, Dupes instead requested a medical

---

[3] http://cdn.govexec.com/media/gbc/docs/pdfs_edit/042312bb1.pdf

[4] This is analogous to fear of recriminations in reporting sexual assaults in the military, and later claims for PTSD. AZ v. Shinseki, 731 F.3d 1303, 1322-23)(Fed.Cir. 2013)(due to threat of reprisals for reporting sexual assault, error for VA to deny PTSD claims by relying on absence in service records documenting the alleged assaults as evidence assaults did not occur).

board for disability processing.   This was reasonable– a physician even months later in August 1979 in an exit medical exam, noted no change— persistent urethral strictures, dysuria (burning painful urination) and hematuria (bloody discharge).

12.   The request for a medical board was denied.  Dupes elected for early discharge.

13.   On his exit medical questionnaire in August 1979, Dupes noted symptoms that are now known as consistent with a mild PTSD and TBI— in addition to noting persistent urinary problems, he listed prior head injuries, periods of unconsciousness, vision troubles, severe recurring headaches, recurrent back pain, shortness of breath, pain or pressure in chest.  Current psychiatric literature indicate that symptoms of TBI and PTSD overlap.[5]  And they indicate that poor cardiovascular health and recurrent back pain can be symptoms of undiagnosed PTSD.[6]

14.   Dupes was discharged on 9 August 1979.  The DD Form 214 contains an error by citing discharge was under ¶ "2-17, AR 635-200, SPD [code] MBM."[7]   Paragraph 2-17 is for Reservists released from ADT after completing specialty training.  The actual discharge orders dated 7 August 1979 simply state authority as "AR 635-200."  Army Regulation 635-5-1 defines use of MBM code for voluntary discharges from a medical holding unit for either — (1) the soldier does not reenlist [¶ 5-19], or (2) the soldier is not physically qualified in current speciality and elects not to retain and reenlist [¶ 5-19.1].  It is presumed that Dupes was the latter due to the disqualifying Physical Profile requiring retraining into a new speciality to reenlist.

15.   In 1979 Dupes left his prior Army base in Germany, and returned to Phoenix AZ.  However, he soon returned to Germany for civilian work near a US military base.  Due to his urinary problems he applied to the VA in 1980.  The VA could only refer him for an exam to the

---

[5] http://www.ptsd.va.gov/public/pages/traumatic_brain_injury_and_ptsd.asp (symptoms overlap;  TBI can influence or develop into PTSD).

[6] *"Study: got back pain? PTSD may be the cause."* Army Times, (5 Nov. 2012)(citing VA and other studies); http://www.ptsd.va.gov/professional/pages/ptsd-physical-health.asp (VA National Center for PTSD; link between physical health and PTSD including poor cardiovascular health).

[7] Separation Program Designation (SPD).

local 97th US Army Hospital. However, the Army and VA still did not recognize PTSD diagnosis. They only supported VA disability benefits for the urinary problems. Effective 1980, the VA in 1981 granted 20% disability for the same recurrent bladder and urethral stricture, and urinary tract infections. This questions the Army's 1979 determination for corrective surgery to reenlist.

16.  As noted above, PTSD was not added to the American Psychiatric Association's DSM-III until 1980. This remained controversial even by 1990, and not adopted internationally in ICD-10 until 1992.[8]  The VA began PTSD treatment in mid-1980s. The VA did not begin to effectively treat PTSD until the late 1980s-early 1990s, then offering beyond the first generation trycyclics, to second-generation medications including Prozac, Zoloft, and Paxil.

17.  By 1991, the VA granted 50% disability for PTSD. In 2008 it increased to severe 80% rating with 100% for total unemployability. Records in 2008 showed that PTSD symptoms included periods of incapacitation from: flashbacks, intrusive thoughts, severe anxiety and panic attacks, major depression, and deficits in cognitive functions-- impaired concentration and memory, difficulty making decisions. The Social Security Administration agreed in 2011 with the PTSD, adding TBI diagnosis.

BCMR applications; VA diagnosed "polytrauma disability" (TBI, PTSD, combat wounds)

18.  In January 2010 Dupes filed an application before the BCMR seeking disability retirement alleging he was improperly denied a medical board in 1979 for his urinary conditions. He added a claim for PTSD, alleging neither the VA nor Army at that time recognized the disability. Therefore, his PTSD was never considered by a proper medical board.

19.  While his BCMR application was pending, Dupes in 2011 sought VA treatment for worsening mental problems and neuropathy (sensation loss in lower extremities). VA records show testing began for suspected TBI and PTSD as "polytrauma disability" — newly termed by the VA to

---

[8] http://www.ptsd.va.gov/professional/pages/ptsd-overview.asp. See also Scott, W. J., 1990. *PTSD in DSM-III : A case in the politics of diagnoses and disease*. Social Problems, 37 (3).

describe injuries to multiple body parts and organs occurring as a result of blast-related injuries.... Traumatic brain injury (TBI) frequently occurs in polytrauma in combination with other disabling conditions, such as amputation, auditory and visual impairments, spinal cord injury (SCI), post-traumatic stress disorder (PTSD), and other medical conditions.[9]

20. On 26 July 2011, the BCMR denied his claim. The attached cover letter from the Director of the BCMR stated "you may request reconsideration of this decision within one year by letter to the above address...only if you can present new evidence or argument...."

21. VA medical records though mid 2012, show Dupes' mental problems worsening, while neuropathy left complete sensation loss below the waist. Followup VA and brain scans confirmed polytramua, with deteriorating TBI symptoms of memory decline, disabling chronic headaches, some lasting for 2 weeks, poor judgement, acting without thinking. This was found related to his PTSD. His VA claim for increased disability compensation for "polytrauma/TBI" was submitted by his attending neurologist, and remains pending.

21. Dupes in 2012 struggled psychologically to begin assembling new evidence to submit for BCMR reconsideration. This included additional Army records, and new SSA and VA records to establish his disabilities for urinary/bladders problems, PTSD and TBI.. Prior unavailability of other records not before the first BCMR, was complicated by delays attributed to PTSD and TBI.

22. As the July 2012 deadline approached Dupes completed his application. However, prior to filing, he mentally and physically collapsed-- suffering an severe episode of incapacitating PTSD symptoms and TBI disabling migraines. This was triggered by his deteriorating disabilities coupled with traumatic memories recollected while preparing his medical and historical records. When he recovered, he mailed documents the final week of July to the BCMR with the cover letter dated "July 27, 2012."

23. The BCMR staff examined the application, and it was forwarded to full Board for processing and on the merits. The following two letters were sent:

---

[9] http://www.polytrauma.va.gov/understanding-tbi/definition-and-background.asp



**DEPARTMENT OF THE ARMY**
ARMY REVIEW BOARDS AGENCY
1901 SOUTH BELL STREET 2ND FLOOR
ARLINGTON, VA 22202-4508

August 10, 2012

Congressional and Special Actions/lab
Dupes, Robert H.
Q20120002736

Mr. Robert H. Dupes
807 Swinton Avenue
Bronx NY 10465

Dear Mr. Dupes:

    I am responding to your letter concerning a previously denied application. This Agency has oversight authority for the Army Board for Correction of Military Records (ABCMR).

    I have forwarded your letter and compact disc to the ABCMR for processing. The ABCMR will determine the merits of your request and you will be notified of the outcome. Please note that the ABCMR works its cases on a first in first out basis and strives to complete each one within 12 months of its date of receipt.

    I trust this information is helpful.

Sincerely,

Rick A. Schweigert
Chief, Congressional and Special Actions



**DEPARTMENT OF THE ARMY**
ARMY REVIEW BOARDS AGENCY
1901 SOUTH BELL STREET, 2ND FLOOR
ARLINGTON, VA 22202-4508

August 23, 2012

Case Management Division/bas
Case Number AR20120015326

Mr. Robert H. Dupes
807 Swinton Ave
Bronx NY 10465

Dear Mr. Dupes:

We acknowledge receipt of your application, DD Form 149, Application for Correction of Military Records, or DD Form 293, Application for Review of Discharge from the Armed Forces of the United States, dated July 27, 2012. Your application has been assigned the case number shown above.

The various Army Review Boards review cases in the order in which they are received. Due to the number of applications on hand and the complexity of many cases, it may be as long as twelve months before you receive notification of the decision on your application.

If your address changes during this time, please notify us at the address above. Reference your case number and provide your new address so we may maintain contact with you.

Thank you for your patience as we obtain your records and consider your application.

Sincerely,

Klaus P. Schumann
Chief, Case Management Division

Case 1:15-cv-01047   Document 1   Filed 07/01/15   Page 10 of 14

24. The case was however, was returned by the Board to the staff, instructed to write a letter to Mr. Dupes— that the request for reconsideration of 27 July 2012, was untimely by 1-day, and so it was returned without forwarding to the Board for a decision on the merits:



**DEPARTMENT OF THE ARMY**
ARMY REVIEW BOARDS AGENCY
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22202-3531

October 17, 2012

Case Management Division/rp
AR20120015326

Mr. Robert H. Dupes
807 Swinton Ave
Bronx NY 10465

Dear Mr. Dupes:

This is in response to your July 27, 2012 request to the Army Board for Correction of Military Records (ABCMR) for reconsideration of ABCMR Docket Number AR20110000723. This case was considered by the ABCMR on July 26, 2011.

Army Regulation 15-185 sets forth procedures for processing requests for correction of military records. Paragraph 2-15b governs requests for reconsideration. This provision of the regulation allows an applicant to request reconsideration of an earlier ABCMR decision if the request is received within one year of the ABCMR's original decision and it has not previously been reconsidered.

The staff of the ABCMR reviewed your request for reconsideration and determined that your request for reconsideration was not received within one year of the ABCMR's original decision. As a result, your request for reconsideration does not meet the criteria outlined above, and we are returning your request without further action.

The ABCMR will not consider any further requests for reconsideration of this matter. However, you have the option to seek relief in a court of appropriate jurisdiction.

Sincerely,

Klaus P. Schumann
Chief, Case Management Division

Enclosure

10

Relevant legal cases to equitably toll agency requests for reconsideration seeking disability:

24A.   The Supreme Court in 2011 decided <u>Henderson v. Shinseki</u>,131 S.Ct. 1197 (2011) (appealing deadline procedural rule not jurisdictional but "claims-processing rule" subject to equitable tolling; reversing veterans court dismissal as untimely the notice of appeal of mentally ill veteran's benefits claim outside 120 deadline).  The Veterans Court initially dismissed the appeal as untimely concluding that Henderson was not entitled to equitable tolling because he had not shown that his illness had caused his tardy filing.   The federal circuit dismissed it again, under <u>Bowles v. Russell,</u> 5 U.S. 205 (2007)(statute of limitations of notice of appeal in ordinary civil case is jurisdictional so equity tolling not apply).

25.   The Supreme Court in <u>Henderson</u> relied on the fact VA claims are not ordinary, but uniquely informal, non-adversarial, and protective of claimants.  The analog is to social security disability claims, while "the solicitude of Congress for veterans is of long standing."  The court found that the "rigid jurisdictional treatment"  of the 120-day period for filing notice of appeal "would clash sharply  with this scheme."   See also <u>Cf</u>, <u>Sibelius v. Auburn Regional Medical Center</u> 133 S.Ct. 817, 827-828 (2013)(agency's internal appeal deadline not subject to equitable tolling; unlike remedial statutes, the statutory scheme here is not designed to be "unusually protective' of claimants ...Nor is it one in which laymen, unassisted by trained lawyers, initiate the process.").  Noteworthy is Justice Sotomayor's concurring opinion.

> we have never suggested that the presumption in favor of equitable tolling is generally inapplicable to administrative deadlines * * * In administrative settings other than the one presented here, I believe the "background principle" that limitations periods "are customarily subject to equitable tolling," [citation omitted] may limit an agency's discretion to make filing deadlines absolute.

<u>Id</u>, at 829-30.

26.   The paternalistic approach towards military members by military review boards was recognized in <u>Robinson v. Resor</u>, 469 F.2d 944, 947, 950 (D.C.Cir. 1972) (set aside soldier's discharge when he signed request in lieu of trial while in hospital after suffering nervous collapse and deep mental shock from mental strain of wife's illness combined with court-martial charges).

Although found legally competent and "certified sane", the Army failed to weigh these "other pressures which obviously affected the soundness of Robinson's judgment" when he signed the discharge request.  Id at 950.

27.   The Robinson case re-affirmed the BCMR's mandate to correct not only legal error but remove injustice, by quoting from the Supreme Court:

> We hold that the relation of the Government to its soldiers, both as to substantive decisions on their status *and the procedures used to arrive at those decisions, must be "if not paternal at least avuncular."*  Substantial fairness, rather than nitpicking compliance with precise regulations, must guide the Army's actions.  The Army must not be allowed to reach, step by technical step, a result which, viewed in its entirety, constitutes an overreaching leap into the arbitrary and inequitable.

Robinson at 951 [emphasis added].

28. Robinson and recent case law imply an *ultra vires* claim that limits the BCMR authority— it may not simply follow agency procedure, if in such a manner it constitutes or creates an injustice.  10 U.S.C. § 1552(a). See Neal v. Secy of Navy 639 F.2d 1029, 1042 (3rd Cir. 1981)(despite BCMR following proper procedure, §1552 (a) obliged them to remove an injustice when agency practice did not comport with traditional notions of fairness);   Yee v. United States, 512 Cl.Ct. 1383, 1387-88 (1974) (while BCMR violated no procedure its inaction perpetuated an injustice).  Haselwander v. McHugh, 774 F.3d 990 (2014)(when Correction Board fails to correct injustice in record, "it is acting in violation of *its mandate* under 10 U.S.C. § 1552(a),"[emphasis added] citing Yee v. United States, 512 F.2d 1383, 1387 (Ct.Cl.1975) ("the record compelled the board to correct his records to 'remove an injustice'").

29.   A closer case allowed judicial review of an untimely reconsideration motion to a VA agency.  Jaquay v. Principi, 304 F.3d 1276, 1287-88 (Fed.Cir 2002) (jurisdiction over appeal of *pro se* veteran's benefits claim after untimely motion for reconsideration to VA agency was equitably tolled).

12

30. Finally, the provisions of the BCMR enabling statute, 10 U.S.C. ¶ 1552, make no distinction between original applications and requests for reconsideration. <u>Lipsman v. Sec'y of Army</u>, 335 F.Supp.2d 48 (D.D.C.2004)(provisions of ¶ 1552 apply to both types of applications).

31. The 2012 ABCMR's mindless application of its 1 year deadline to summarily refuse Dupes' request for reconsideration, shockingly ignored the gross injustice of 1-day tardiness due to incapacitating disabilities caused by Army service.

CAUSE OF ACTION

The 2012 decision of the Army Board for Correction of Military Records Army, denying plaintiff's request to forward for reconsideration the Board's 2011 decision, violated the Administrative Procedure Act as arbitrary and capricious agency action, unsupported by substantial evidence, not in accordance with law, and otherwise constituted an injustice.

In the alternative, the 2012 action of the Army Board for Correction of Military Records Army denying plaintiff's request to forward for reconsideration the Board's 2011 decision, was *ultra vires* agency action by exceeding the limits of its authority under 10 U. §1552 (a)(1) when the particular application of  ¶ 2-15b, of Army Regulation 15-185, to his case was an injustice.

PRAYER FOR RELIEF

That this Honorable Court declare that the Army BCMR's 2012 refusal to forward plaintiff's request for reconsideration of its 2011 decision of relief violated the Administrative Procedure Act as arbitrary and capricious agency action, unsupported by substantial evidence, not in accordance with law and Army regulations, or otherwise was an injustice.

Or in the alternative, that this Honorable Court declare that the Army BCMR's 2012 refusal to forward plaintiff's request to reconsider its 2011 was *ultra vires* agency action exceeding the limits of its authority under 10 U. §1552 (a)(1) when the particular application of ¶ 2-15b, of Army Regulation 15-185, to his case was an injustice.

That the Court remand to the BCMR for appropriate relief;

That based upon this remand judgment, this Honorable Court grante attorney fees.

27 June 2015                                        Respectfully Submitted,


a/s John A. Wickham,  DC Bar 454863
32975 Saint Moritz Drive
Evergreen, CO 80439.
303 670-3825 fax: 303 670-1586
wickham1@wispertel.net  (ECF account email)

Counsel for Plaintiff Robert Dupes